IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
AT KANSAS CITY, MISSOURI

| | |
|---|---|
| PRIME CUT KC, LLC, ) | |
| ) | |
| Plaintiff/Counterclaim Defendant, ) | |
| ) | |
| v. ) | Case No. 4:13-CV-1118 |
| ) | |
| KANSAS CITY LIVE BLOCK 139 RETAIL, ) | |
| LLC, ) | |
| ) | |
| Defendant/Counterclaim Plaintiff and ) | |
| Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JAMES P. LYNCH, JR. and KEVIN F. ) | |
| LYNCH, ) | |
| ) | |
| Third Party Defendants. ) | |

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW Plaintiff Prime Cut KC, L.L.C. ("Plaintiff"), by and through undersigned counsel and for its First Amended Complaint for Declaratory Judgment, states as follows:

**Introduction**

1. This action is brought by Plaintiff seeking a declaratory judgment declaring that Plaintiff is not in breach of a lease executed by Plaintiff, as tenant, and Kansas City Live Block 139 Retail, LLC ("Defendant"), as landlord.

**Parties**

2. Plaintiff is a Missouri limited liability company, active and in good standing, and is sole owner of a restaurant located at 71 E. 14th Street, Kansas City, Missouri 64105, which is the premises at issue in this dispute.

3. Defendant is a Maryland limited liability company licensed and doing business in Kansas City, Jackson County, Missouri.

## Jurisdiction and Venue

4. This declaratory judgment action is brought pursuant to R.S.Mo. § 527.010 et seq. An actual case or controversy exists between Plaintiff and Defendant with respect to whether Plaintiff is in breach of the Lease (as defined in paragraphs 7, 9, and 10 hereinafter).

5. Jurisdiction over Defendant is proper in the State of Missouri because the Defendant is qualified to do business and is doing business in Missouri.

6. Venue is proper in Jackson County under R.S.Mo § 508.010 because the premises at issue are located in this County, and the parties conduct business in this County.

## Facts

7. On or about June 6, 2008, Plaintiff, as Tenant, and Defendant, as Landlord, executed a lease ("Lease") for certain space located at 71 E. 14th Street, Kansas City, Jackson County, Missouri ("Premises") within the Power and Light District. A copy of the Lease is attached hereto as **Exhibit "A"** and incorporated herein by reference.

8. Under Section 27.02, the Lease states, "This Lease is made pursuant to, and shall be governed by, and construed in accordance with the Laws of the State of Missouri and any applicable local, municipal or county rules, regulations, and ordinances. Any action or proceeding arising hereunder shall be brought in the courts of such state."

9. On or about October 30, 2009, Plaintiff and Defendant executed an Amendment to Lease ("Amendment I"). A copy of Amendment I is attached hereto as **Exhibit "B"** and incorporated herein by reference.

10. On or about February 1, 2011, Plaintiff and Defendant executed a second Amendment to Lease ("Amendment II"). A copy of Amendment II is attached hereto as **Exhibit "C"** and incorporated herein by reference.

11. Under Amendment II, Section 1, beginning February 1, 2013 Tenant shall pay on or before the 10th of each month the sum of $27,500. This amount is the base rent.

12. Under Amendment II, Section 1, for each twelve month period of February through January Tenant shall pay to Landlord on or before the last day of each February an amount equal to the amount by which 12% of Tenant's Gross Sales for the prior February through January twelve month period exceeds the fixed amount of payments for base rent. This amount is the percentage rent.

13. Under Amendment II, Section 2, Tenant shall make payments against Past Due Rent as follows:

    a.     $20,000 on December 1, 2011

    b.     $20, 000 on December 1, 2012

    c.     Thereafter, equal payments of $32,500 on June 1, 2013 and each successive June 1 until fully paid.

14. Under Amendment II, Section 5, Landlord shall not exercise its right to terminate the Lease and all amendments thereto until Landlord has provided Tenant with notice of Tenant's default and a ten day cure period.

15. Defendant regularly sent Plaintiff monthly invoices reflecting specific amounts due under the Lease for rents which Plaintiff relied on to ensure accurate payments.

16. On December 27, 2011, Plaintiff paid $20,000 towards the Past Due rent amount due as outlined in Section 2 of Amendment II.

3
Case 4:13-cv-01118-GAF   Document 23   Filed 03/28/14   Page 3 of 11

17. On December 12, 2012 Plaintiff paid $20,000 toward the Past Due rent amount due as outlined in Section 2 of Amendment II.

18. Prior to February 2013, Plaintiff paid $25,000 each month as the fixed base rent as outlined in the Lease as amended by Amendment I and Amendment II.

19. Beginning in February 2013, Plaintiff has paid Defendant $27,500 each month as the fixed base rent in accordance with Amendment II.

20. On March 15, 2013, Diane Wheeler, an employee of The Cordish Company, emailed Peggy Williams, former Accounting Manager for 801 Chophouse, stating that an amount of $49,727.76 was due for percentage rent based on the period for January 2012 through December 12.

21. On March 20, 2013, Peggy Williams replied that according to Amendment II percentage rent was to be based on gross sales in excess of base rent for the period of February 2012 through January 2013.

22. On March 20, 2013 Diane Wheeler replied that the incorrect period was used by her in calculating the percentage rent in the amount of $49,727.76.

23. The corrected percentage rent in the amount of $55,204.44 for the period of February 2012 through January 2013 was updated on a spreadsheet and attached to Diane Wheeler's March 20th email.

24. In the March 20th email Diane Wheeler wrote, "I did go back and look at February 2011 thru [sic] January 2012, and this percentage rent was never billed. I have added this calculation to my attached worksheet."

25. The updated spreadsheet attached to the March 20, 2013 email from Diane Wheeler was the first time Plaintiff was notified of the 2011 percentage rent due in the amount of

4

$21,637.56. The 2011 percentage rent should have been billed in February 2012 not March 2013 if Defendant required strict compliance with the percentage rent provisions of Amendment II.

26. The March 28th email from Diane Wheeler did not state that Plaintiff as Tenant was in default of the Lease or Amendments.

27. The March 28th email was sent eight days after the first notice of the corrected amount of percentage rent due for the period of February 2012 through January 2013.

28. On or about April 5, 2013, Peggy Williams resigned from her position as the Accounting Manager for 801 Chophouse.

29. On April 8, 2013, Peggy Williams notified Diane Wheeler that the new contact for the account would be Sheri Osborn and that the new accountant would be Chris Harris who would not begin working until late April.

30. On April 8, 2013 Peggy Williams instructed Sheri Osborn to prepare a check that day in the amount of $21,637.56 for the payment of 2011 percentage rent.

31. On April 8, 2013 Sheri Osborn prepared the check for 2011 percentage rent per Peggy William's instruction.

32. Plaintiff never received a late payment notice for the 2011 percentage rent which was paid almost 14 months after it should have been paid according the terms set forth in Amendment II of the Lease.

33. Plaintiff never received a default notice for failure to timely pay the 2011 percentage rent pursuant to Section 5, Amendment II.

34. On April 24, 2013, Defendant mailed Plaintiff a letter stating, "you have failed to comply with the Lease…and the Amendment to Lease dated February 1, 2011….[Y]ou have failed to timely pay and have failed to pay at all certain payments due on or before the end of

5

each February based on the extent to which 12% of Gross Sales exceeds the fixed amount of payments….As a result, …, all sums due under the Lease without regard to such Amendment are immediately due and payable...."

35. The April 24th letter from Defendant was the first default notice Plaintiff has received. It was apparently sent in response to Plaintiff's decision to not rent additional space from Defendant for another restaurant.

36. The invoice from Defendant for the rent due in May 2013 did not include any amounts for the 2012 percentage rent. It carried numerous other charges that are being paid in accordance with Amendment II but it did not include any reference to the percentage rent.

37. Under Amendment II, Section 5, Plaintiff was allowed a ten day cure period after receiving the April 24th default notice to correct default. No ten day cure period was given by the April 24th default notice.

38. On May 7, 2013, Plaintiff paid $27,602.22 towards the amount due for percentage rent for the period of February 2012 through January 2013.

39. On June 7, 2013, Chris Harris, Accounting Manager for 801 Group, sent an email to Diane Wheeler asking her for a copy of the June invoice. In the email Chris stated, "I wanted to get a check sent out today but was unsure of what amount to make it out for."

40. Plaintiff never received a June, 2013 invoice.

41. Defendant sent no monthly invoices to Plaintiff during the months of June, July, August, September and October in 2013.

42. Plaintiff has continued to send payment for the base rent in the amount of $27,500 each month despite having received no invoice since May 2013.

6
Case 4:13-cv-01118-GAF   Document 23   Filed 03/28/14   Page 6 of 11

43. On September 11, 2013 Defendant mailed Plaintiff a letter stating, "[e]nclosed is a statement of rent due under the Lease, as amended. This reflects the failure to comply with the Amendment as provided in Section 5 and elsewhere, and as you have previously been notified."

44. The invoice included in the September 11, 2013 letter asserts that **$1,112,157.42** is due from Plaintiff to Defendant. A copy of the September 11, 2013 letter and invoice is attached hereto as **Exhibit "D"** and incorporated herein by reference.

45. The September 11th letter was not a notice of default but instead purports to be a billing of amounts Defendant claims is due under the Lease. Plaintiff disputes that the amount stated in the attachment to that letter is presently due and payable under the Lease.

46. Defendant did not allow Plaintiff a ten day cure period after receipt of the September 11th letter, which is required under Section 5 of Amendment II.

47. Because there was no ten day cure period in the April 24, 2013 notice and no second notice of default, Defendant Landlord should not be permitted to terminate the Lease and all amendments thereto or accelerate amounts that may become due until Landlord has provided Tenant with the required notice of Tenant's default and a ten day cure period pursuant to Section 5 of Amendment II.

48. On September 19, 2013 Plaintiff paid the remaining $27,602.22 towards the amount due for percentage rent for the period of February 2012 through January 2013.

49. On September 19, 2013, Plaintiff paid $32,500 toward the Past Due rent amount due as outlined in Section 2 of Amendment II.

50. As of September 19, 2013, Plaintiff has paid in full all amounts due to Defendant under the Lease despite the lack of invoices since May 2013 from Plaintiff and the confusing and inconsistent manner in which the percentage rent has been billed to Plaintiff.

## COUNT I – DECLARATORY JUDGMENT

51. Plaintiff adopts and incorporates by reference paragraphs 1 through 50 of the Petition as if fully set forth herein.

52. Plaintiff denies it is in default of the Lease and Amendments thereto.

53. Plaintiff received only one purported default notice from Defendant in a letter dated April 24, 2013. This notice did not include a ten day cure period as required by Section 5 of Amendment II.

54. Defendant is required to provide Plaintiff with notice of Plaintiff's default and a ten day cure period pursuant to Section 5 of Amendment II.

55. Only after Plaintiff receives a notice of default permitting Plaintiff to cure the defect within ten days is Defendant allowed to exercise its right to terminate the Lease and all amendments thereto without sending further notices or providing further cure periods pursuant to Section 5 of Article 2.

56. Defendant is estopped from declaring Plaintiff in default of the Lease and Amendments because Defendant has not provided Plaintiff with a second notice of default and allowed Plaintiff ten days to cure default pursuant to the terms of Amendment II, Section 5. Defendant also is estopped by its own conduct in the confusing and contradictory manner in which it has billed and collected percentage rent and other rent under the Lease.

57. Based on the parties' course of conduct and the Lease, Plaintiff expected to receive a notice of default prior to Defendant terminating the Lease or accelerating amounts due under the Lease because Plaintiff has only received one notice of default in the past.

58. Plaintiff has been injured by Defendant's failure to send a second notice of default in contradiction of the Lease and Amendment II. Plaintiff has invested substantial sums of money and time in its restaurant.

59. Plaintiff and Defendant waived the requirement that all modifications must be in writing by their conduct. The percentage rent has been inconsistently billed and not in accordance with the terms of Amendment II. The initial percentage rent payment was billed and paid over thirteen months after the dates provided in Amendment II.

60. Defendant has breached the covenant of good faith and fair dealing implied in every contract under Missouri law. *Farmers' Elec. Co-op., Inc. v. Dept. of Corrections*, 977 S.W.2d 266 (Mo. 1998). All sums due under the Lease as amended have been paid and Defendant was aware the Plaintiff's employee had sought a statement of the amounts due in June.

61. Defendant has declared default for an improper purpose relating to other proposed business transactions. Plaintiff believes the Defendant's actions are the result of Plaintiff's refusal to open another restaurant in the Power & Light District or elsewhere on property owned or managed by Defendant's owner.

62. Plaintiff seeks entry of a declaratory judgment by this Court establishing that Plaintiff is not in default of the Lease and Amendments thereto, that all amounts due under the Lease and Amendments have been paid to date, and that Plaintiff does not owe Defendant $1,112,157.42. While Defendant continues to accept all rent payments, it refuses to acknowledge Plaintiff is not in default of the Lease.

63. A justiciable controversy exists between the Plaintiff and Defendant.

64. Plaintiff has a legally protectable interest at stake. It will be irreparably harmed if this dispute is not resolved.

9

Case 4:13-cv-01118-GAF   Document 23   Filed 03/28/14   Page 9 of 11

65. The question presented is appropriate and ripe for judicial resolution.

WHEREFORE, Plaintiff Prime Cut KC, L.L.C. respectfully requests that this Court declare that Plaintiff is not in default of the Lease Agreement with Defendant, that this Court determines Plaintiff does not owe Defendant $1,112,157.42 under the Lease Agreement and Amendments, that all amounts due under the Lease and its Amendments have been paid to the date of the Court's judgment, and to grant such other and further relief as the Court may deem appropriate.

Respectfully submitted,

**BROWN & RUPRECHT, PC**

By: /s/ Frank Wendt
    Frank Wendt, MO Bar #34244
    Joan M. Sheridan, MO Bar #66224
911 Main, Suite 2300
Kansas City, Missouri 64105
(816) 292-7000 Telephone
(816) 292-7050 Facsimile
fwendt@brlawkc.com
jsheridan@brlawkc.com
**Attorneys for Prime Cut KC, LLC,
James P. Lynch, Jr. and Kevin F. Lynch**

## CERTIFICATE OF SERVICE

   I hereby certify that on March 28, 2014, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

W. James Foland
Monica M. Fanning
Foland, Wickens, Eisfelder, Roper & Hofer, PC
911 Main Street, Suite 3000
Kansas City, MO 64105
(816) 472-7474 Telephone
(816) 472-6262 Facsimile
jfoland@fwpclaw.com
mfanning@fwpclaw.com
**Attorneys for Kansas City**
**Live Block 139 Retail, LLC**


and I hereby certify that I have mailed by United States Postal Service to the following non CM/ECF participants:

            /s/ Frank Wendt
            **Attorneys for Prime Cut KC, LLC, James P.**
            **Lynch, Jr. and Kevin F. Lynch**